**Dominic J. Picca**
212-692-6859
djpicca@mintz.com

MINTZ

666 Third Avenue
New York, NY 10017
212 935 3000
mintz.com

April 18, 2019

VIA ELECTRONIC CASE FILING

The Honorable John G. Koeltl
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re: *Philips Medical Systems MR, Inc. v. Continental Disc Corporation*; Case No. 19-cv-01498-JGK

Dear Judge Koeltl:

Mintz Levin represents plaintiff Philips Medical Systems MR, Inc. ("Philips") in this matter. We write in response to defendant Continental Disc Corporation's ("CDC") letter dated April 10, 2019 [ECF No. 17]. Specifically, this letter briefly outlines why venue is proper in the United States District Court for the Southern District of New York (the "SDNY") in advance of our conference with the Court on May 14, 2019. In short, venue is proper in the SDNY pursuant to the forum and venue selection clauses in the governing contract central to this matter. We look forward to discussing these issues with you at our conference, and, if necessary, fully briefing these issues for your review.

A. Background

This dispute arises out of Philips' contract to purchase stainless steel rupture discs from CDC. In its Complaint, Philips alleges, *inter alia*, CDC breached this contract by failing to provide rupture discs that complied with the strict specifications required by Philips. Specifically, on September 15, 2015, Philips submitted a purchase order offering to purchase one thousand rupture discs to be manufactured by CDC (the "Offer"). Philips' Offer stated "all transactions for the purchase of goods and/or services by any Philips company for the Philips Healthcare sector are subject to the Philips General Conditions of Purchase . . . ." [Exhibit A]. The Offer included a hyperlink to Philips' General Conditions of Purchase [Ex. B] which included the following two clauses:

> 23.9: The Agreement shall be governed by and construed in accordance with the laws of the State of New York. Any and all disputes arising out of, or in connection with this Agreement will be settled by the competent state courts in New York, New York or federal courts in the Southern District of New York.
>
> 23.10: Supplier and Philips each consents to the exclusive jurisdiction of the competent courts in (i) the country or state in which the Philips ordering entity is located....

On December 18, 2015, CDC shipped one hundred of the thousand rupture discs to Philips in New York along with an invoice and CDC's general terms and conditions attached. As described in its Complaint, Philips used these rupture discs as a safety related component in the superconducting magnets that are used in their MRI machines/systems that Philips manufactures and then sells to clinical customers around the world.

MINTZ

In November 2017, Philips learned that a rupture disc had failed to rupture in the field, posing a safety risk due to a large volume of helium gas entering the MRI examination room. Philips immediately began an investigation and post-market risk assessment according to quality procedures. Subsequent testing by both Philips and CDC confirmed that many rupture discs manufactured and supplied by CDC did not comply with the strict specifications required by Philips. Therefore, in the interest of safety, Philips had no reasonable choice but to issue an international recall. The Parties entered into a tolling agreement in an attempt to resolve the dispute, including participating in a formal mediation, but could not come to an agreement. On the first business day after the tolling agreement expired, Philips filed suit in the SDNY on Monday, February 18, 2019.

B. SDNY is the proper venue pursuant to the governing contract

Forum selection clauses are common in commercial contracts because they "provide certainty and predictability in the resolution of disputes." *Boss v. American Express Fin. Advisors,* 6 N.Y.3d 242, 247 (2006). Under New York law, "parties to a contract may freely select a forum which will resolve any disputes over the interpretation or performance of the contract." *Brooke v. JCH Syndicate*, 87 N.Y.2d 530, 534 (1996). Such clauses "are prima facie valid" and "are not to be set aside unless a party demonstrates that the enforcement of such would be unreasonable and unjust or that the clause is invalid because of fraud or overreaching, such that a trial in the contractual forum would be so gravely difficult and inconvenient that the challenging party would, for all practical purposes, be deprived of his or her day in court." *Sterling Nat. Bank as Assignee of Norvergence v. Eastern Shipping,* 35 A.D.3d 222 (1st Dep't 2006) (quotations omitted). In short, "***a valid forum selection clause establishes sufficient contacts with New York for purposes of jurisdiction and venue.***" *Koninklijke Philips v. Digital Works,* 358 F. Supp. 2d 328, 333 (S.D.N.Y. 2005).

In *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 134 S.Ct. 568, 583 (2013), the United States Supreme Court provided the contractual basis for the enforcement of forum selection clauses:

> When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain.

Notably, the language cited by CDC from *Atlantic Marine* related to the Court's analysis of the mechanisms for dismissal when a plaintiff files in a ***different venue than the one described in the forum selection clause*** of the contract. *Cf. Nymbus v. Sharp*, 2018 U.S. Dist. LEXIS 18302, *14 (D. Conn. Feb. 5, 2018) (stating "the Supreme Court did not confront facts involving a selection of forum that was in accordance with the parties' forum selection clause and that was chosen pursuant to defendant's venue waiver"). Here, the facts are opposite: Philips filed in the SDNY pursuant to the contract which expressly states that "all disputes arising out of, or in connection with this Agreement will be settled by the competent stated courts in New York, New York or federal courts in the Southern District of New York" and each Party "consents to the exclusive jurisdiction of the competent courts in (i) the country or state in which the Philips ordering entity is located...." Taken together, the plain language of the contract demonstrates that the Parties agreed to jurisdiction in

MINTZ

the SDNY and CDC contracted away its right to challenge venue. *See, e.g., ICICI Bank v. Essar Global Fund,* 565 B.R. 241, 252 (S.D.N.Y. 2017). For these reasons, CDC's argument that the SDNY is an improper forum or venue for this dispute fails.

Moreover, CDC's anticipated argument that its terms control is unsupported by contract law. It is indisputable that Philips' purchase order was an offer and that CDC's response was an acceptance rather than counteroffer. Under the UCC, "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." N.Y. C.L.S. U.C.C. § 2-204(1). Moreover, so long as a party makes "[a] definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time," that expression "operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms." N.Y. C.L.S. U.C.C. *§ 2-207*(1).

This provision of the UCC was adopted "to deal with two typical situations," one of which is precisely the situation here: where there is an "exchange of printed purchase order and acceptance," but because "the forms are oriented to the thinking of the respective drafting parties, the terms contained in them . . . do not correspond." *Id.* cmt. 1. Even though "the seller's form contains terms different from or additional to those set forth in the buyer's form," this does not operate as a counteroffer but rather acceptance is still effected per UCC § 2-207. *Id.* Importantly, "[i]f the seller's response does not state that acceptance is 'expressly made conditional' on the buyer's assent to additional terms the seller included, that response operates as an acceptance and a contract is formed." *Stemcor v. Trident Steel,* 471 F. Supp. 2d 362, 367 (S.D.N.Y. 2006).

Here, Philips submitted to CDC a purchase order which "expressly reject[ed] Supplier's general conditions of sale and any additional or different terms or provisions" provided by CDC. See Ex. B ¶ 2.2. CDC fulfilled the order by shipping goods to Philips on December 18, 2015, and included an invoice along with CDC's terms and conditions. Such "conduct" by CDC "recognizes the existence of such a contract" created by Philips' purchase order and CDC's fulfillment. N.Y. C.L.S. U.C.C. § 2-204(1). Moreover, the dueling terms in CDC's invoice do not place Philips "on unambiguous notice that the invoice is a mere counteroffer." *Stemcor,* 471 F. Supp. 2d at 366. Thus, Philips' purchase order constitutes the offer and CDC's fulfillment constitutes the acceptance. As such, an enforceable agreement exists between the Parties, the terms of which may be found in Philips' purchase order and accompanying General Conditions of Purchase, which includes the SDNY as the appropriate forum and venue for this matter.[1/]

---

[1/] In addition to the foregoing, the Parties' terms and conditions themselves support this conclusion. Philips' terms include a provision that states Philips' "General Conditions of Purchase, together with the relevant Purchase Order issued by Philips, set forth the terms under which Philips' offers to purchase Goods and/or Services from Supplier." See Ex. B ¶ 2.1. The same provision states, "[w]hen Supplier accepts Philips' offer, either by acknowledgement, delivery of any goods, and or commencement of performance of any Services, a binding contract shall be formed." *Id.* CDC's terms state that "***[q]uotations are not offers subject to the purchaser's acceptance***," and any orders from buyers "are subject to acceptance by a Company representative . . . ." See CDC's General Terms and Conditions [Ex. C.] ¶¶ 3-4. (emphases added). The parties' respective terms thus confirm what the UCC provides for: Philips made an offer by submitting a purchase order that CDC accepted.

MINTZ

April 18, 2019
Page 4

MINTZ

Respectfully submitted,

Dominic J. Picca

cc: All Counsel of Record (via ECF)

4

86797798v.2